IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00398-MSK-BNB

JOSEPH ROSANIA, as Chapter 7 Trustee for the Bankruptcy Estate of Springbok Services, Inc.,

Plaintiff,

v.

GROUP O, INC., an Illinois corporation, and
MURAD VELANI, an individual,

Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the following:

(1)   **Group O's Motion to Dismiss Plaintiff's Breach of Fiduciary Duty Claim Based on the Colorado Economic Loss Doctrine** [Doc. # 12, filed 3/13/2013] (the "Motion to Dismiss"); and

(2)   **Plaintiff's Motion for Leave to File Amended Complaint to Add Claim for Exemplary Damages and a Request for Restitution** [Doc. # 31, filed 6/14/2013] (the "Motion to Amend").

I respectfully RECOMMEND:

(1)   The Motion to Dismiss [Doc. # 12] be GRANTED; and

(2)   The Motion to Amend [Doc. # 31] be GRANTED IN PART and DENIED IN PART, as follows:

•GRANTED to allow the addition of a prayer for exemplary damages against Murad Velani;

    • GRANTED to allow the addition of a prayer for restitution against both defendants; and

    • DENIED insofar as it seeks to add a prayer for exemplary damages against Group O.

I.  Motion to Dismiss [Doc. # 12]

The plaintiff is a Trustee in bankruptcy (the "Trustee")  who stands in the shoes of Springbok Services, Inc.  The Trustee's Complaint [Doc. # 3] alleges that Springbok and Group O entered into a contract (the "Agreement") under which Springbok "provided to Group O prepaid card services so that Group O could establish programs for its customers, including . . . AT&T and Qwest" and "acted as the processor and would provide and process prepaid cards for use in Group O's programs with its customers."  Id. at ¶¶14-15.  In addition, the Trustee alleges that Murad Velani served in a dual capacity--as president and chief operations officer of Group O and, simultaneously, on the board of directors of Springbok.  Id. at ¶¶26, 29.  The Trustee also alleges that "Group O and Velani engaged in a scheme to contrive false justifications to terminate the Agreement. . . ."  Id. at ¶65.

Based on these allegations, the Trustee brings six claims for relief: First Claim against Group O for breach of contract; Second Claim against Group O for breach of the implied duty of good faith and fair dealing; Third Claim against Group O for breach of fiduciary duty; Fourth Claim against Velani for breach of fiduciary duty; Fifth Claim against Group O for aiding and abetting breach of fiduciary duty; and Sixth Claim against Group O and Velani for conspiracy.

Group O moves to dismiss the Third Claim for breach of fiduciary duty arguing that it is barred by Colorado's economic loss doctrine.

Where, as here, a motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Trustee has attached a copy of the Agreement as an exhibit to his Complaint [Doc. # 3-1]. "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991).

In Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256, 1264 (Colo. 2000), the Colorado Supreme Court announced Colorado's economic loss rule as follows:

> [A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

The rule is designed to serve three purposes:

> (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.

BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004). See Untied Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1226 (10th Cir. 2000) (stating that Colorado's economic loss rule "is designed to preclude plaintiffs from circumventing the law of contract and seeking recovery in tort for what in essence is merely a claim of damages for breach of

contract").

The analysis applied in determining whether Colorado's economic loss rule bars an action in tort was summarized in Hamon Contractors, Inc. v. Carter & Burgess, Inc., 229 P.3d 282, 290 (Colo. App. 2009):

> The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action. A breach of a duty which arises under the provisions of a contract between the parties must be redressed under the contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action.
>
> \* \* \*
>
> In determining whether the duty allegedly breached in a given case is independent of the parties' contract, a court must be mindful of the distinct sources of contract and tort obligations. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property.

(Internal quotations and citations omitted; original emphasis.) "[I]t is the source of the duty allegedly breached that determines whether the economic loss rule applies." Casey v. Colorado Higher Ed. Ins. Bene. Alliance Trust, 310 P.3d 196, 202 (Colo. App. 2012)(citing Town of Alma, 10 P.3d at 1263).

In this case, the Trustee alleges that Group O breached a fiduciary duty owed to Springbok. The critical issue raised by the Motion to Dismiss is whether the tort duty was independent of a contractual duty. See, e.g., Makoto USA, Inc. v. Russell, 250 P.3d 625, 627 (Colo. App. 2009).

The decision of the Colorado Court of Appeals in the Casey case is particularly instructive. There, the court noted:

> Courts consider three factors to determine the source of the duty: Is the relief sought for breach of contract? Is there an established common law duty of care? Does the tort duty differ from the contractual duty?
>
> If the answer to these questions establish that the duty of care is "memorialized" in the contract, it follows that (1) there is no duty independent of the contract; (2) the economic loss rule bars the tort claim; and (3) the parties are held to the terms of the contract that they negotiated. Even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract because courts assume that sophisticated parties can include the potential cost of breach of contractual duties in contracts they negotiate.

Casey 310 P.3d at 202 (internal quotations and citations omitted).

The only duty alleged in the Complaint to have been breached by Group O was its obligation "of partnering" with Springbok. Complaint [Doc. # 3] at ¶16. Based on this contractually assumed obligation of partnering, the Trustee alleges that Group O "described its relationship with Springbok as a partnership," id. at ¶17; treated the relationship as a partnership, id. at ¶18; and that "Group O and Springbok worked together to service Group O's existing customers including AT&T and Qwest." Id. at ¶19. All of these rights and duties arise out of and are memorialized in the Agreement.

Applying the test as articulated in Casey, (1) the relief sought is for breach of the Agreement; (2) the Trustee fails to allege a duty independent of the Agreement; and (3) the duty of care alleged by the Trustee is memorialized in the Agreement. Here, as in Casey, the Trustee's allegations clearly are based on the duty owed to Springbok as described in the Agreement, not on a general duty imposed by law that is designed to protect all persons from a risk of harm. Casey, 310 P.3d at 203. Accord First Franklin Financial Corp. v. United Title Co., Inc., 2009 WL 3698526 at *3 (D. Colo. Nov. 5, 2009)(stating that "[w]here, however, the only

5

allegation in the tort claim is the breach of promises the parties have made to each other, the claim sounds in contract" (internal quotation and citation omitted)).

It is true that "Colorado courts have recognized that some special relationships . . . by their nature automatically trigger an independent duty of care that supports a tort action even when the parties also have a contractual relationship." Micale v. Bank One N.A., 382 F. Supp. 2d 1207, 1222 (D. Colo. 2005)(quoting Logixx Automation, Inc. v. Lawrence Michels Family Trust, 56 P.3d 1224, 1232 (Colo. App. 2002)).  A partnership is such a special relationship, and partners bear fiduciary duties one to another.  Hooper v. Yoder, 737 P.2d 852, 859 (Colo. 1987). The Trustee's conclusory legal assertion that "Group O and Springbok were partners with respect to the AT&T Business," Complaint [Doc. # 3] at ¶41, without any supporting factual allegations, however, is belied by the terms of the Agreement.  The hallmarks of a partnership under Colorado law include "a contract of the parties . . . whereby they agree to place their money, effects, labor and skill in a lawful business and to divide the profits and bear the loss in certain proportions." Mann v. Friden, 287 P.2d 961, 964 (Colo. 1955); see section 7-60-106(1), C.R.S. (defining a partnership as an association of to or more persons to carry on a business "as co-owners").  Here, the Agreement makes clear that Springbok was to be paid specified fees for its services and was not entitled to a division of the profits nor obligated to bear any losses, Agreement [Doc. # 3-1] at ¶6, and the Trustee does not make any factual allegations to the contrary.

Because the duties relied on by the Trustee arise solely from the Agreement between Group O and Springbok and not from a common law duty independent of the Agreement, the Trustee's tort claim for breach of fiduciary duty is barred by Colorado's economic loss rule and

6

should be dismissed.

## II.  Motion to Amend [Doc. # 31]

### A.  Exemplary Damages

Exemplary damages in Colorado are controlled by section 13-21-102, C.R.S., which provides in relevant part:

> (1)(a)  In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.  The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.
>
> (b)  As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.
>
> (1.5)(a)  A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief.  A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 . . . and the plaintiff establishes prima facie proof of a trial issue. . . .

In the words of the Colorado Supreme Court, "[w]here the defendant is conscious of his conduct and the existing conditions and knows or should have known that injury would result, the statutory requirements of section 13-21-102 are met."  Coors v. Security Life of Denver Ins. Co., 112 P.3d 59, 66 (Colo. 2005).

### 1.  Group O

The Trustee bases his request for exemplary damages against Group O on the Third

7

Claim alleging breach of fiduciary duty. I have found that the fiduciary duty claim is barred by Colorado's economic loss rule and have recommended that it be dismissed. Consequently, the Trustee's request to amend to add a prayer for exemplary damages based on that claim should be denied.

The Trustee does not argue nor present any evidence establishing prima facie proof that his Fifth Claim for aiding and abetting breach of fiduciary duty or Sixth Claim for conspiracy entitle him to an award of exemplary damages, and I will not make the argument for him. See O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1257 n.1 (10th Cir. 2001).

Nor may the Trustee seek exemplary damages based on his claim for breach of contract (First Claim) or breach of the implied covenant of good faith and fair dealing (Second Claim). Exemplary damages are not available under Colorado law in breach of contract actions. Decker v. Browning-Ferris Ind. of Colorado, 947 P.2d 937, 941 (Colo 1997); Watson v. Cal-Three, LLC, 254 P.3d 1189, 1197 (Colo. App. 2011).

The Trustee's request to add a prayer for exemplary damages against Group O should be denied.

2. Murad Velani

The Trustee alleges that Mr. Velani was president and chief operating officer of Group O, Complaint [Doc. # 3] at ¶29; simultaneously was on the board of directors of Springbok and chairman of that board, id. at ¶¶26-27; that, as chairman of its board of directors, owed Springbok fiduciary duties, id. at ¶28; and was "hopelessly conflicted." Id. at ¶¶ 34, 110. Despite this conflict, the Trustee alleges that Mr. Velani failed to recuse himself from Springbok's dealings involving Group O. Id. at ¶37.

The Trustee has presented evidence, in the form of emails and testimony during Rule 2004 examinations, that Mr. Velani knew of and participated in a scheme to terminate the Agreement for an invalid reason; failed to disclose the plan to Springbok for more than three months while Group O arranged for a substitute vendor to replace Springbok; and manufactured a false excuse for Springbok's termination. The evidence establishes prima facie proof that Mr. Velani's conduct was attended by circumstances of fraud and malice and was purposefully committed without regard to its consequences on Springbok. Mr. Velani makes no serious argument to the contrary.

The Trustee should be permitted to add a prayer for exemplary damages against Mr. Velani.

## B.  Restitution

Finally, the Trustee seeks to amend the Complaint to add a claim for restitution, explaining:

> Springbok and Group O issued prepaid debit cards to customers of Group O. The cards sometimes expired before all of the funds allocated to the card had been used. The Trustee seeks restitution of, among other things, payments received by Group O of those unused card funds.

Motion to Amend [Doc. # 31] at p. 2 n.1.

The availability of restitution as a remedy900 p3d 113 in a breach of contract case was addressed by the Colorado Supreme Court in <u>EarthInfo, Inc. v. Hydrosphere Resource Consultants, Inc.</u>, 900 P.2d 113 (Colo. 1995):

> This case presents a question of first impression for this court: whether a party that breaches a contract can be required to disgorge to the non-breaching party any benefits received as a result of the breach.

> \* \* \*
> [C]ourts have been reluctant to award profits to a nonbreaching party in a breach of contract action, thus allowing the party in breach to keep part of the gain, since in effect a mere breach of contract is not a wrong. Many others, however, have suggested that if the gain realized by the party in breach exceeds the injured party's loss, the measure of damages should strip the party in breach of all gain. We adopt neither approach as a general rule, and hold instead that whether profits are awarded to a nonbreaching party shall be determined within the discretion of a trial court on a case by case basis.
> \* \* \*
> No easy formulas exist for determining when restitution of profits realized by a party is permissible. Instead, the court must resort to general considerations of fairness, taking into account the nature of the defendant's wrong, the relative extent of his or her contribution, and the feasibility of separating this from the contribution traceable t the plaintiff's interest. Thus, the more culpable the defendant's behavior, and the more direct the connection between the profits and the wrongdoing, the more likely that the plaintiff can recover all defendant's profits. The trial court must ultimately decide whether the whole circumstances of a case point to the conclusion that the defendant's retention of any profit is unjust.
>
> Generally, the mere breach of a contract will not make the defendant accountable for benefits thereby obtained, whether through dealings with a third person or otherwise. . . . If, however, the defendant's wrongdoing is intentional or substantial, or there are no other means of measuring the wrongdoer's enrichment, recovery of profits may be granted.

Id. at 117-19 (internal quotations and citations omitted).

The defendants argue that restitution is available only "when a party seeks rescission of a contract, which neither party in this case has done." Response [Doc. # 35] at p. 11. Although it is true that rescission was sought in the EarthInfo case, the court's reasoning does not limit the availability of restitution only to cases of rescission.

I cannot say on the record now before me that the Trustee's prayer for restitution

necessarily will fail. Instead, as the Colorado court explained, the answer will require a fact intensive inquiry after all of the evidence is developed.

The Trustee's request to add a prayer for restitution should be granted.

### III. Recommendation

I respectfully RECOMMEND:[1]

(1) The Motion to Dismiss [Doc. # 12] be GRANTED, and the Trustee's Third Claim, for breach of fiduciary duty against Group O, be dismissed;

(2) The Motion to Amend [Doc. # 31] be GRANTED IN PART and DENIED IN PART as follows:

• GRANTED to allow the Trustee to amend the Complaint to assert a prayer for exemplary damages against Murad Velani;

• GRANTED to allow the Trustee to amend the Complaint to assert a prayer for restitution; and

• DENIED insofar as it seeks to add a prayer for exemplary damages against Group O.

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 6, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge